

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* UNIVERSITY LOFT COMPANY<br>Plaintiff,<br>v.<br><br><br>BLUE FURNITURE SOLUTIONS, LLC,<br>BLUE IMPORTS, INC.,<br>YINGQING "JEFF" ZENG,<br>and ALEXANDER C. CHENG<br><br>Defendants. | §§§§§§§§§§§§§§ | CIVIL ACTION NO. A15CV0588 LY<br><br>**FILED IN CAMERA**<br>**AND UNDER SEAL**<br>Pursuant To 31 USC §3730(b) |

**PLAINTIFF'S ORIGINAL COMPLAINT**
**(JURY TRIAL DEMANDED)**

The United States of America *ex rel.* J Squared, Inc. d/b/a University Loft Company ("Relator"), files this Complaint against Defendants Blue Furniture Solutions, LLC, Blue Imports, Inc., Yingqing "Jeff" Zeng and Alexander C. Cheng, (collectively "Defendants"). In support thereof, Relator respectfully would show the Court as follows:

**I.**
**PARTIES**

1. Relator is an Indiana Corporation having its principal place of business in Greenfield, Indiana.

2. Defendant Blue Furniture Solutions, LLC ("Blue Furniture Solutions") is a Florida company with its principal place of business in Medely, Florida.

3. Defendant Blue Imports, Inc. ("Blue Imports") is a Florida company that, upon information and belief, is now inactive but previously engaged in the illegal conduct alleged herein.

4. Defendant Yingqing "Jeff" Zeng, who is an officer of Blue Furniture Solutions and Blue Imports, is believed to be a Florida resident and may be served at his place of business or at any other location he may be found.

5. Defendant Alexander C. Cheng, who is an officer of Blue Furniture Solutions, is believed to be a Florida resident and may be served at his place of business or at any other location he may be found.

## II.
## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over the claims alleged in this Complaint under 28 U.S.C. §§ 1331 (Federal question), 1345 (United States as plaintiff) and 31 U.S.C. § 3732(a) (False Claims Act).

4. This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because the Defendants can be found, reside, and/or transact business in this District. Title 31, United States Code, Section 3732(a) further provides for nationwide service of process.

5. Upon information and belief, this Complaint is not based on the facts underlying any pending related *qui tam* action, within the meaning of the False Claims Act's first-to-file rule, 31 U.S.C. § 3730(b)(5).

6. This action is not precluded by any provisions of the False Claims Act's jurisdiction bar, 31 U.S.C. § 3730(e) *et seq.*

        a.      Upon information and belief, this Complaint is not based upon allegations or transactions that are the subject of a civil suit or an administrative civil money penalty proceeding in which the United States is already a party. 31 U.S.C. §3730(e)(3).

        b.      Upon further information and belief, there has been no "public disclosure" of key facts alleged herein regarding Relator's discovery and investigation of the fraud. Moreover, Relator is an "original source" of information as defined by 31 U.S.C. §3730(e)(4)(B) of the False Claims Act and provided a detailed description of the fraud before filing this action to the U.S. Department of Justice.

7.      Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), and 31 U.S.C. § 3732(a), because one or more of the Defendants can be found in and/or transact business within this District.

## THE FEDERAL FALSE CLAIMS ACT

8.      The False Claims Act (FCA), which was originally enacted in 1863, was substantially amended in 1986 by the False Claims Amendments Act, Pub.L. 99-562, 100 Stat. 3153 to enhance the Government's ability to recover losses as a result of fraud. Among other things, the amendments created incentives for individuals with knowledge of fraud on the United States to disclose the information without fear of reprisals or Government inaction, and to encourage the private bar to commit resources to prosecuting fraud on the Government's behalf. According to the Supreme Court, the FCA is intended to reach all types of fraud, without qualification, that might result in financial loss to the Government. The FCA, as amended, includes a reverse false claims provision that imposes liability on a party that, by false statement, seeks to conceal, avoid, or decrease a precise, preexisting obligation to pay the United States. 31 U.S.C. § 3729(a)(1)(G).

9. The FCA provides that any person who knowingly makes, uses, or causes to be made or used false records and statements to decrease its obligations to the Government is liable for a civil penalty ranging from $5,500 up to $11,000 (as of the filing date of this Complaint) for each such violation, plus three times the amount of the damages sustained by the Federal Government.

## THE APPLICATION OF THE FCA TO THE TARIFF ACT OF 1930

10. All goods imported into the United States are taxed according to the Harmonized Tariff Schedule of the United States ("HTS") (codified at 19 U.S.C. § 1202). The United States Customs and Border Protection division of the Department of Homeland Security ("CBP") is responsible for assessing and collecting these duties. CBP relies on importers to supply accurate information about imported merchandise, including the applicable HTS classification. The importer is required to declare under oath that, among other things, "all statements in the invoice or other documents filed with the entry, or in the entry itself, are true and correct." 19 U.S.C. § 1485(a)(3).

11. Under customs regulations, importers have an existing, non-contingent and nondiscretionary liability for customs duties. *See, e.g.,* 19 C.F.R. §§ 141.4, 159.2 (demanding entry and liquidation of imported merchandise); 19 U.S.C. § 1503 (assessment of duties on imports is generally based on the appraised value of the imported goods as determined on liquidation). Such liability arises immediately and automatically upon the importation of goods into the United States. 19 C.F.R. § 141.1(b)(1).[1]

---

[1] In addition to paying estimated duties, taxes, and fees when products enter the country, importers also are generally required to provide a bond to help ensure that the government can recover additional duties, taxes, or fees that may be owed. *See* 19 C.F.R. §§ 113.62 and 142.4 for CBP bonding requirements. In

4

12. Pursuant to 19 U.S.C. §1592, no person "may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States" by fraud, gross negligence, or negligence. Direct liability under 19 U.S.C. §1592 can extend to a person negligently involved with introducing merchandise into commerce using a material and false misstatement even if that person is not the actual importer of record and does not have the requisite intent to be liable as an "aider or abetter."

13. Accordingly, false statements or records made to avoid or decrease this obligation to pay are actionable under the False Claims Act's reverse false claims provision. 31 U.S.C. §3729(a)(1)(G) (formerly 31 U.S.C. §3729(a)(7)).

14. The FCA allows any person having information about false or fraudulent claims to bring an action as a relator for itself and the Government, and to share in any recovery.[2] The FCA requires that the original *qui tam* complaint be filed under seal for a minimum of 60 days (without service on the defendant during that time). Based on these provisions, Relator seeks through this action to recover on behalf of the United States all available damages, civil penalties, and other relief for the violations alleged herein.

15. Although the precise amount of the loss from Defendants' misconduct alleged in this action cannot presently be determined, Relator estimates that the damages, not including

---

general, the importer is required to obtain a bond equal to 10 percent of the amount the importer paid in duties, taxes, and fees over the preceding year (or $50,000, whichever is greater).

[2] The FCA was amended again 2010 in connection with enactment of health care reform laws. *See the Patient Protection and Affordable Care Act*, P.L. 111-148, Title X, Subtitle A, § 10104(j)(2), 124 Stat. 901 (Mar. 23, 2010). Among other changes, the "public disclosure bar" and "original source" provisions in Section 3730(e)(4) of the FCA were amended to broaden the ability of relators to bring *qui tam* lawsuits under the Act.

civil penalties, attorneys' fees and interest, that may be assessed against the Defendants under the facts alleged in this Complaint is over $6 Million.

## III.
## FACTS

16. Relator has been a supplier of wooden bedroom furniture to the student housing industry for 25 years. It employs nearly two hundred American workers to manufacture and/or assemble its furniture at its factories in Indiana and Tennessee. When Relator does import certain wooden parts and other components from other countries, it strives to ensure that all applicable duties are paid. Relator and its American workers can compete head-to-head with any other company in the United States in this industry —as long as there is a level playing field and its competitors play by the rules.

17. Defendant Blue Furniture Solutions and its predecessor Defendant Blue Imports are based in Florida. Unlike Relator, these companies have never had a factory in the United States and do not manufacture their own bedroom furniture. Rather, they have imported ready-to-assemble ("KD") bedroom furniture from China and essentially have acted as a sales representative - distributor of this furniture. In fact, in most instances, when the imported ready-to-assemble furniture arrives in the United States, the furniture is apparently shipped directly from the docks to the customer. Upon information and belief, Defendants Yingqing "Jeff" Zeng and Alexander C. Cheng exercise control over Defendant Blue Furniture Solutions, and Defendant Zeng exercised control over Blue Imports.

18. Relator and Defendant Blue Furniture Solutions both provide furniture for student housing projects. Relator's supplier relationships, manufacturing techniques and its internal pricing models have been developed over many years and comprise the primary reasons why Relator is often the successful bidder on projects. In recent years, however, Relator has

observed that Blue Furniture Solutions has been successfully underbidding Relator or other competitors.

19.     Based on Relator's experience in the industry, its internal pricing models, and its familiarity with tactics used by some companies to illegally import furniture, University Loft began an investigation into how Blue Furniture Solutions has been able to underbid its competitors. One of the many variables taken into account by Relator's internal pricing models is the import duty that is imposed on various items of furniture. For example, wooden chests of drawers typically make up about 37% of the cost of equipping a student housing bedroom. Thus, a variation on the import duty paid on wooden chests of drawers significantly impacts the estimated cost and pricing calculations involved in a bid proposal.

20.     After reviewing numerous records regarding Blue's imports and gathering information from its contacts in China about Blue and its suppliers. University Loft reached the conclusion that the costs of Blue Furniture Solutions and its predecessor Blue Imports for purchasing and importing the bedroom furniture from China were substantially below the costs predicted by University Loft's internal pricing models, because they have been illegally evading customs duties.

21.     The United States has established laws to remedy the unfair trade practices of other countries and foreign companies that cause injury to domestic industries. For example, U.S. laws authorize the imposition of AD duties on imports that were "dumped" (i.e., sold at less than normal value) and CV duties on imports subsidized by foreign governments.

22.     One such example of AD duties is the imposition of a high tariff rate on certain wooden bedroom furniture ("WBF") imported from the People's Republic of China. See Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order:

Wooden Bedroom Furniture from the People's Republic of China, 70 FR 329 (January 4, 2005). The Anti-Dumping Order was renewed in 2010. See Case No. A-570-890 Wooden Bedroom Furniture From the People's Republic of China: Final Results of Expedited Sunset Review of Antidumping Duty Order ("ADD Case"). A copy of the Antidumping duty order entered in the ADD Case ("ADD Order") can be found at 75 Fed. Reg. 19364 *et seq.*

23. The ADD Order states, in relevant part:

The product covered by the order is WBF. WBF is generally, but not exclusively, designed, manufactured, and offered for sale in coordinated groups, or bedrooms, in which all of the individual pieces are of approximately the same style and approximately the same material and/or finish. The subject merchandise is made substantially of wood products, including both solid wood and also engineered wood products made from wood particles, fibers, or other wooden materials such as plywood, strand board, particle board, and fiberboard, with or without wood veneers, wood overlays, or laminates, with or without non-wood components or trim such as metal, marble, leather, glass, plastic, or other resins, and whether or not assembled, completed, or finished.

The subject merchandise **includes** the following items:

(1) **Wooden beds** such as loft beds, bunk beds, and other beds; (2) **wooden headboards** for beds (whether stand-alone or attached to side rails), wooden footboards for beds, wooden side rails for beds, and wooden canopies for beds; (3) **night tables, night stands, dressers**, commodes, bureaus, mule chests, gentlemen's chests, bachelor's chests, lingerie chests, wardrobes, vanities, chessers, chifforobes, and **wardrobe-type cabinets**; (4) dressers with framed glass mirrors that are attached to, incorporated in, sit on, or hang over the dresser; (5) chests-on-chests \1\, highboys \2\, lowboys \3\, **chests of drawers** \4\, chests \5\, door chests \6\, chiffoniers \7\, hutches \8\, and armoires \9\; (6) desks, computer stands, **filing cabinets,** book cases, or writing tables that are attached to or incorporated in the subject merchandise; and (7) other bedroom furniture consistent with the above list…. (emphasis added)

24. The ADD Order specifically defines "chest-on-chests, highboys, lowboys, chest of drawers, chests, door chests, chiffoniers, hutches, and armoires." The definitions of a chest-on-chest, a highboy and a lowboy all include the phrase "chest of drawers." A "chest of drawers" is defined in the ADD order as a "case containing drawers for holding cloths." Thus, the

8

common element in each of these definitions is that the article of furniture has drawers for holding or storing clothes.

25.     In summary, if a piece of furniture has drawers that are of the size typically used to hold or store clothes, the Department of Commerce (DOC) will determine that the item is within the scope of the ADD Order and is subject to antidumping duties.[3] Under the ADD Order, the antidumping duty cash deposit rate on WBF for Chinese exporters that have not been found to be entitled to a separate rate is currently 216.01%. On the other hand, the ADD Order also specifically excludes certain items from the AD Duty. For example, certain types of office furniture, such as filing cabinets, are not subject to the AD Duty of 216.01%. Rather, this furniture is subject to a much lower duty.

26.     Since at least as early as 2009, Blue Furniture Solutions and its predecessor Blue Furniture Imports have imported thousands of articles of WBF from China. While these Defendants generically described their imports as "Furniture" for most shipments in 2009-2012, it is clear this Furniture must have included WBF, because all of the furniture sold by these Defendants is imported from China, and Blue Furniture Solutions was selling WBF at least as early as 2011 as evidenced by Blue's catalogs and website. This conclusion is bolstered by reviewing the catalog and website of Homelink International, Ltd., which was Blue Furniture Solutions' primary Chinese "shipper" during this time period. Upon information and belief Homelink is simply be a "pass through" entity based in Hong Kong. Blue also used other "suppliers" including Shenzhen Heng Li De Industry ("Heng"). However, upon information and belief, Heng may not be the actual manufacturer, because Heng focuses on TV mounts and other hardware according to Relator's investigation.

---

[3] The written description of the scope of the ADD order is dispositive, not the HTS classification. HTS classifications are listed in the scope of ADD orders for convenience only, and do not determine whether a product falls under the scope of an ADD order.

27. In or around 2012 Blue Furniture Solutions began to misleadingly describe its imported furniture. For example, it used descriptions such as "Beds (steel)" and "nightstands (steel)." Upon information and belief, this furniture was not steel but WBF. This same pattern continued throughout 2014. In 2015, Blue Furniture Solutions changed tactics slightly and began misleadingly describing furniture as metal storage cabinets or metal file cabinets. Based on University Loft's knowledge in the industry, its first-hand observation of the Blue's furniture, including the furniture from Blue's 2013 installation of furniture at Wildwood student housing in San Marcos, Texas, and a review of Blue Furniture Solutions' website and most recent catalog, the furniture at issue includes WBF. This fact is confirmed by Blue Furniture Solutions' recent promotional videos displaying the furniture. https://www.youtube.com/channel/UCFtmfr0kfx6ZN2Y15FWas4Q.

28. In addition to providing misleading descriptions of the WBF, University Loft believes that Blue and its principals intentionally misclassified items to evade the applicable AD Duties. For example, wooden bedroom chests of drawers are properly classified under HTS subheading 9403.50.90, which provides for "Other furniture and parts thereof: Wooden furniture of a kind used in the bedroom." University Loft believes that Blue has intentionally misclassified WBF under other HTS subheadings such as 9403.609.990 or 9401.790.000 to avoid scrutiny by the CPB.[4]

29. Relator believes that the Defendant companies, with the full knowledge and participation of the individual defendants, have used the schemes described above on multiple occasions from 2009 through the present. Based on the information presently known to University Loft, the estimated custom duties that the Blue Defendants should have paid since 2009 for

---

[4] Even if Blue correctly classified and described the furniture, it still is liable for unpaid AD Duties, because, upon information and belief, it failed to use the correct code for entry type or otherwise failed to properly identify the goods as being subject to the ADD Order. See 19 CFR §141.61(c).

importing WBF is over $6 Million, not including duties that may have been owed on shipments simply listed as "furniture" or containing some other generic description. These amounts also do not include duties that Blue Furniture Solutions may have illegally avoided regarding furniture shipped after May 2015.

30. Upon information and belief, as of the date of this Complaint, Blue Furniture Solutions is continuing to import WBF from China without paying the required anti-dumping duties.

## COUNT I

### Violation of the False Claims Act - 31 U.S.C. § 3729(a)(1)(G)

31. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

32. By virtue of the acts described above, Defendants Blue Furniture Solutions and Blue Imports violated and Blue Furniture Solutions continues to violate the reverse false claims provision of the FCA by evading applicable import duties on furniture, because they knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government. 31 U.S.C. § 3729(a)(1)(G) (formerly 31 U.S.C. § 3729(a)(7)).

33. By reason of Defendants' actions, the United States has been damaged, and continues to be damaged, in a substantial amount.

## COUNT II
### Conspiracy to Violate the False Claims Act - 31 U.S.C. § 3729(a)(1)(C)

34. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

35. Defendants have acted in concert with each other and with other conspirators to violate the False Claims Act by evading applicable import duties on furniture, because they knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government.

36. Defendants committed the overt acts described above in furtherance of the conspiracy, including but not limited to, falsely describing and classifying Chinese Wooden Bedroom Furniture or by otherwise illegally avoiding the obligation to pay antidumping duties. Defendants' conspiracy violates 31 U.S.C. § 3729(a)(1)(C), by which Defendants obtained entry and release of their WBF into the United States without paying amounts due to the United States.

37. By reason of Defendants' conspiracy, the United States has been damaged, and continues to be damaged, in a substantial amount.

38. Relator hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States *ex rel.* University Loft Company respectfully requests that judgment be entered against Defendants, ordering that:

a. Defendants pay not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. §3729 plus three times the amount of damages the United States has sustained because of Defendants' actions;

b. Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

c.  Relator be awarded all costs of this action, including attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d); and

d.  The United States and Relator recover such other relief as the Court deems just and proper.

                        Respectfully submitted,

                        GRAVES, DOUGHERTY, HEARON & MOODY, P.C.
                        401 Congress Ave., Suite 2200, Austin, TX 78701
                        P.O. Box 98, Austin TX 78767-0098
                        (512) 480-5653 Telephone
                        (512) 480-5853 Telecopy

By: _____
                        Steven D. Smit
                        State Bar No. 18527500
                        ssmit@gdhm.com

                        ATTORNEYS FOR RELATOR UNIVERSITY LOFT COMPANY