IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION



| | | |
|---|---|---|
| UNITED STATES OF AMERICA *EX REL.* UNIVERSITY LOFT COMPANY AND J SQUARED, INC., <br>PLAINTIFFS, <br><br>V. <br><br>BLUE FURNITURE SOLUTIONS, LLC, XMILLENIUM, LLC, YINGQING "JEFF" ZENG, AND ALEXANDER C. CHENG, <br>DEFENDANTS. | § § § § § § § § § § § § | CAUSE NO. 1:15-CV-588-LY |

## MEMORANDUM OPINION AND ORDER

Before the court in the above-styled and numbered cause are Defendants' Motion to Dismiss Complaint and Memorandum in Support filed January 19, 2018 (Dkt. No. 37) and United States' Opposition to Defendants' Motion to Dismiss Complaint filed March 2, 2018 (Dkt. No. 42). The court has reviewed the motion, response, applicable law, and the entire case file, and will deny the motion for the reasons that follow.

### I. BACKGROUND

The United States imposes duties on imported goods that are being sold domestically for less than fair-market value. These duties are known as "anti-dumping duties," and are meant to level the playing field between domestic and foreign manufacturers if foreign manufacturers attempt to sell their goods for less than market value. *See* 19 U.S.C. §§ 1671, 1673. The United States Department of Commerce ("Commerce") issues duty orders that describe foreign imports subject to anti-dumping duties. United States Customs and Border Protection ("Customs") collects those duties. In 2004, Commerce determined that wooden bedroom furniture imported

from China should be subject to anti-dumping duties, and issued a detailed duty order. *See* 70 Fed. Reg. 329–01 (Jan. 4, 2005).

Imported furniture must be entered into the United States, which requires an importer or its agent to file certain documents with Customs. 19 U.S.C. § 1484.[1] Customs uses these documents to determine whether or not to assess Customs duties or fees on the furniture. One such required form is an entry summary which contains the date of import, the importer of record, a code signifying the entry type (including whether the entry contains any items subject to anti-dumping duties), and the value of the items.

Blue Furniture Solutions, LLC ("Blue Furniture") imports furniture from China for sale in the United States. Yingqing "Jeff" Zeng and Alexander Cheng are the sole members of Blue Furniture. Zeng and Cheng formed XMillenium, LLC ("XMillenium") in 2015.

A company with which Blue Furniture did business filed a complaint on July 7, 2015 alleging violations of the False Claims Act ("the Act"). *See* 31 U.S.C. § 3729. The government filed a complaint in intervention on August 17, 2017 (Dkt. No. 24). The government's complaint alleges that Defendants Blue Furniture, XMillenium, Zeng, and Cheng engaged in a scheme of falsely misidentifying wooden bedroom furniture on documents submitted to Customs in order to avoid millions of dollars in anti-dumping fees.[2] Essentially, the complaint describes two schemes: one in which Blue Furniture used false entry codes and other false information, which

---

[1] The entity serving as the "importer of record" is assigned the responsibility of paying anti-dumping duties and using reasonable care in making and providing accurate documentation to Customs. An importer of record is also responsible for ensuring that the imported goods comply with local laws, filing a completed duty entry and associated documents with Customs, and paying the import duties and other fees on those goods. Importers often employ a licensed Customs broker to act on their behalf and serve as the importer of record, as Blue Furniture did here.

[2] As the interests of Defendants do not diverge, the court will refer to them generally as "Blue Furniture," unless otherwise noted or as needed for context.

2

it submitted to Customs; a second in which Blue Furniture undervalued merchandise to reduce Customs duties. More specifically, the complaint alleges that Zeng and Cheng instructed employees to mislabel bedroom furniture as office furniture and wooden furniture as metal furniture. The complaint also alleges a double-invoice scheme, in which Zeng and Cheng directed employees to create one packing list and invoice for Customs, which falsely described furniture as non-wooden or non-bedroom, and another, more accurate "detailed" list and invoice for Blue Furniture to use when installing its furniture. The complaint describes six separate Customs entries containing items purchased from China and sold in the United States as wooden bedroom furniture. Attached to the complaint is a spreadsheet containing the Customs details of 176 unique entries, which contained dressers, nightstands, and beds allegedly subject to the anti-dumping order.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P.12(b)(6). A complaint need not contain detailed factual allegations, but in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to

3

dismiss, the court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2009).

Independent of the standard under 12(b)(6), the Federal Rules require a heightened pleading standard for claims arising out of fraud. *See* Fed. R. Civ. P. 9(b). *See U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). Rule 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In accordance with Rule 9(b), a complaint alleging fraud under the Act, "may [] survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190.

### III. The government plausibly states a claim for relief under the Act.

The Act imposes civil liability on any person who fraudulently or knowingly deprives the United States of property. *See* 31 U.S.C. § 3729(a)(1). One of the Act's provisions, the "reverse-false-claim" provision, prohibits improper retention of government property, including not paying money that should have been paid to the government. *Id.* at § 3729(a)(1)(G).[3] Section 3729 of the Act imposes liability for a person who:

- "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government;" or
- "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government."

---

[3] Typically, a claim under the Act alleges that a person or company submitted a bill to the government for work that was not performed or was performed improperly, resulting in an undeserved payment flowing to that person or company. By contrast, the allegations here are not that Blue Furniture is obtained money from the government to which it is not entitled, but rather, that it retained money it should have paid the government in the form of Customs duties. Wrongful retention cases such as these are known as "reverse-false-claims" actions.

4

*Id.*⁴ The Act also prohibits conspiracy to do the same. *See id.* at § 3729(a)(1)(C). The Act permits a private person (a realtor) to bring suit against a person who wrongfully retained money from the government by failing to pay duties. *See* §§ 3729(a), 3730(b).

The government alleges that Blue Furniture, XMillenium, Zeng, and Cheng violated the Act. Blue Furniture moved to dismiss the complaint on January 19, 2018 (Dkt. No. 37). Blue furniture argues the following: (1) Zeng and Cheng cannot be liable because neither was the importer of record for the allegedly illegal imports and because the complaint does not allege facts that support piercing the corporate veil; (2) defendant Cheng cannot be liable for goods imported before June 2015; (3) XMillenium cannot be liable because it was created after Blue Furniture submitted allegedly false Customs documents; and (4) the complaint fails to meet the particularity requirements of Rule 9(b) as to all defendants.

### a. Liability of Cheng and Zeng

Cheng and Zeng argue that all counts should be dismissed against them because the complaint fails to demonstrate that they are liable for the imports of Blue Furniture. This argument, however, is not in accord with the language of the False Claim Act. The Act imposes liability on "a person" who "knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the Government." 31 U.S.C. § 3729(a)(1)(G). Obligation is defined as "an

---

⁴ While the first bullet requires that the government allege that false statements or records were made or used, the second bullet has no such requirement. This is a change since the Act was amended in 2009, as the Act previously required a false statement. *See United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 246 (3d Cir. 2016), *cert. denied sub nom. Victaulic Co. v. U.S., ex rel. Customs Fraud Investigations, LLC*, 138 S. Ct. 107, 199 (2017). The court concludes that the government has plausibly stated a claim for both, as explained in further detail below.

established duty, whether or not fixed, arising from . . . statute or regulation." *Id.* at § 3729(b)(3). Though the Customs laws place certain obligations on the importer of record, *see* 19 U.S.C. § 1484, the Act is not so limited. It creates indirect liability for one who knowingly made, used, or caused a false record or statement material to "an" obligation, and does not tie the action (making, using, or causing) to the possessor of the obligation under Customs law. The complaint plausibly alleges that Cheng and Zeng could and did make and use false records and statements material to an obligation, and knowingly concealed, avoided, and decreased that obligation. The complaint also alleges that Cheng and Zeng caused Blue Furniture and its agents to submit false records to Customs. *See e.g., United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1040 (5th Cir. 2016) (favorably citing *Victaulic Co.*, 839 F.3d at 246, for the proposition that "failure to pay [C]ustoms duties on mismarked goods can give rise to" a claim under the Act). Whether the obligation belonged to Cheng or Zeng under Customs law is irrelevant to liability under the Act, and Cheng and Zeng will not be dismissed on this basis.

### b. Successor Liability for XMillenium

Blue Furniture argues that XMillenium cannot be responsible for any fraud committed by Blue Furniture because XMillenium was formed after the allegedly fraudulent entries were submitted to Customs. The complaint alleges that Zeng and Cheng formed XMillenium after they learned of the government's investigation in order to conceal Blue Furniture's illegal activities and shelter its assets. Zeng and Cheng also allegedly transferred Blue Furniture's remaining furniture contracts to XMillenium. The government seeks to hold XMillenium liable for Blue Furniture's misdeeds through a theory of successor liability.

Both Blue Furniture and XMillenium are Florida Limited Liability Companies, thus, Florida law applies to the question of successor liability. In Florida, "the liabilities of a predecessor corporation can be imposed upon a successor corporation when: (1) the successor expressly or impliedly assumes obligations of the predecessor; (2) the transaction is a de facto merger; (3) the successor is a mere continuation of the predecessor; or (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor." *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 649 (5th Cir. 2002) (citing *Bernard v. Kee Mfg. Co., Inc.*, 409 So.2d 1047, 1049 (Fla.1982)).

The government alleges that Blue Furniture learned in October 2015 that the United States was investigating Blue Furniture's Customs entries. The government alleges that Zeng and Cheng then formed two new companies to conceal their activities and assets, one of which was XMillenium. Zeng and Cheng were the sole members of the new companies. They also transferred Blue Furniture's remaining contracts to XMillenium. Taking these facts alleged as true, the government has stated a claim for successor liability under at least three parts of Florida's test for successor liability, though only one is required. The government alleges that XMillenium assumed Blue Furniture's obligations when Blue Furniture transferred its furniture contracts to XMillenium. The government also alleges that the formation of XMillenium was a de facto merger, because the shareholders, officers, and employees remained the same, and in that way, XMillenium was a continuation of Blue Furniture. These allegations, when taken as true and combined with reasonable inferences, show that XMillenium may plausibly be held responsible for Blue Furniture's fraudulent Customs entries under a theory of successor liability.

### IV. The government stated a claim for relief under the Act in accordance with Rule 9(b).

Blue Furniture make a litany of arguments as to why the complaint fails to meet the pleading standard of Rule 9(b). Blue Furniture first argues that the majority of the factual allegations supporting the fraud-based claims are generally alleged against the defendants as a group. Blue Furniture also contends that the complaint does not identify Customs brokers who submitted allegedly false information or the individuals who prepared allegedly false documentation. Blue Furniture finally contends that there are no details linking any of the defendants to the submission of false claims.

In the Fifth Circuit, a complaint alleging violations of the Act is sufficient for 9(b) purposes if it "alleg[es] particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190. Blue Furniture is correct in contending that many of the allegations in the complaint are made against the defendants generally. However, the complaint contains a multitude of specific allegations against each of the defendants, sufficient to put each on notice of their role in the scheme of misleading the government about the nature of their furniture in order to avoid anti-dumping duties.

For example, the complaint describes an incident in June 2012 where a Customs broker challenged Blue Furniture's classification of its furniture as metal instead of wood. Zeng told the broker the bedroom furniture was metal and then directed future business away from the questioning broker. On another occasion, Zeng admonished one of his agents to pay special attention when preparing Custom's documents, which he emphasized must describe the company's furniture as metal-framed. The complaint also described many emails in which Zeng and Cheng were cc'd or directly responded to inquiries about the makeup and classification of

8

the furniture. Often a furniture agent would request clarification classifying what appeared in pictures to look like wooden furniture as metal furniture on Customs documents.

The complaint also details separate packing lists that were used by Blue Furniture: one that was sent to Customs and different packing list for Blue Furniture to use when it installed its furniture. The company referred to the latter list as a "detailed packing list." The complaint alleges that a packing list given to Customs would describe an item as a metal file cabinet, while the detailed packing list given to the installers would describe the same item as a dresser. The complaint includes instances in which Zeng and Cheng were cc'd on emails discussing problems that arose when the detailed packing lists were not distributed to the furniture installers.

The complaint also alleges that Cheng and Zeng became aware of a Customs investigation into their labeling, and were told by the government that the Blue Furniture was misclassifying wooden bedroom furniture as metal office furniture. After becoming aware of the investigation, Cheng asked an employee to calculate duties owed on all not-yet-imported-furniture, and then instructed employees to redo invoices and packing lists. The reworked lists included an image of a dresser with files in the bottom drawer and described the dresser on Customs forms as a file cabinet. When asked by an employee about furniture that appeared to be the same as that which Customs had just flagged, Cheng acknowledged that "the file cabinets in this container may resemble the 2-drawer chests in our shipment" subject to anti-dumping duties "but they are different" and "designed to use as file cabinets." These allegations are just a sampling of those contained within the 29 page complaint. When a complaint alleges a systematic practice of fraud, the complaint need not detail every fraudulent claim. *Cf. Grubbs*, 565 F.3d at 190. The allegations in the complaint are more than sufficient to create an inference

9

that Cheng, Zeng, XMillenium, and Blue Furniture were engaged in an ongoing scheme to mislabel their furniture to avoid Customs duties.[5]

The court also concludes that the complaint sufficiently pleads that Blue Furniture acted with the requisite mental state under the Act. It is reasonable to infer from the complaint that the Blue Furniture knowingly, recklessly, or deliberately ignored the falsity of the information when, for example, it created two sets of descriptions—one for Customs and one for their furniture installers, when they continued to direct their employees to mislabel furniture after being assessed duties by Customs. Blue Furniture will be able to thoroughly contest the sufficiency of this knowledge at trial.

Blue Furniture additionally argues that an exhibit attached to the complaint lacks any allegation of what products were in the allegedly fraudulent entries. This is a reference to Attachment A to the complaint, a 35 page spreadsheet detailing specific Customs entries, the entry number, the entry date, the type of merchandise, and the quantity and declared cost of each entry. Blue Furniture contends that the complaint should have contained a more detailed list of all the products entered under each entry. This level of detail is not required under 9(b), however, as the government is not required to present all evidence it would use at trial. The information is more than sufficient to put the Blue Furniture on notice of the entries that the government contends are subject to Customs duties.

### V. The government has particularly stated a claim for a conspiracy to violate the Act.

The Act also imposes civil liability on a person who conspires to commit a violation of the reverse-false-claims provision. *See* 31 U.S.C. § 3729(a)(1)(C). Thus, to adequately plead a

---

[5] Because the complaint adequately alleges a scheme between the Defendants, the court will not dismiss Cheng at this time from the lawsuit for conduct that took place before June 2015.

10

conspiracy claim under the Act, the United States must plead an agreement to violate the reverse false claims provision and an overt act performed in furtherance of that agreement. *See Grubbs*, 565 F.3d at 193. An agreement may be inferred when it is the natural consequence of the facts alleged. *Id.* at 193–94.

The government alleges that each of the Defendants conspired with each other and their Chinese-based suppliers and manufacturers to violate the Act. The court concludes that the complaint contains sufficient allegations when read in the light most favorable to the government for the court to infer the existence of a conspiracy.

The complaint alleges that defendants Cheng and Zeng were sole owners and officers of Blue Furniture and XMillenium. The complaint details several emails in which Cheng, Zeng, and their office manager instructed Chinese manufacturers on how to mislabel products and complete double sets of invoices and packing lists. The double invoices are particularly problematic as they often described the same piece of furniture differently—for example as a filing cabinet on the Customs form and as a dresser on the detailed packing list, because only the latter would be subject to Customs duties. In one instance Blue Furniture's office manager emailed their China agent to "urgently provide [the installer with] detailed packing list for all containers you ship." The agent responded that she could not immediately provide the packing list, and instead provided the furniture installer with the invoice prepared for Customs. The office manager then sent a separate email to the furniture installer, with Cheng and Zeng cc'd, stating that the information sent from the China agent "is just for [C]ustoms clearance" and that Blue Furniture would "provide a better detailed packing list" for the furniture. The complaint contains allegations that Cheng and Zeng instructed manufacturers to change the labeling of furniture originally designated by the manufacturer as beds and dressers, to office furniture on

invoices prepared for Customs. These allegations raise an inference that there was an agreement between Cheng and Zeng to mislabel furniture in order to conceal and avoid their obligation to pay Customs duties on the items. Specific acts were taken to carry out the alleged conspiracy. *Cf. Grubbs*, 565 F.3d at 193–94. Accordingly, the complaint sufficiently states a claim for relief for a violation of the conspiracy provision.

In addition to the claims under the Act, the complaint includes a claim for unjust enrichment in the alternative. Since the court already concluded that the government stated a claim under the Act, the court will not consider a claim for unjust enrichment. Accordingly,

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Complaint and Memorandum in Support filed January 19, 2018 (Dkt. No. 37) is **DENIED**.

SIGNED this 18th day of September, 2018.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE